AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Oregon

FILED 02 MAR '12 09:29 USDC-ORP

United States of America )
v. )
 )
 ) Case No.    **'12-MJ-099**
 )
 )
LATANISHA S. BOOKER , a.k.a. "Tay" )

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ February 29, 2012 _____ in the county of _____ Multnomah _____ in the

_____ District of _____ Oregon _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1512(a)(2)(C) | Use of physical force or threat of physical force against a person with the intent to hinder, delay or prevent the communiation to a law enforcement officer or judge of the United States of information relating to the commission of a Federal Offense. |
| 18 U.S.C. § 1513(b)(2) | Knowingly engaging in any conduct thereby causing bodily injury to another person with the intent to retaliate against the person for providing any information relating to the commission of a Federal offense. |

This criminal complaint is based on these facts:

See Attached Affidavit of Yonsoo Lee, attached hereto and incorporated herein.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

_____ Special Deputy U.S. Marshal, Yonsoo Lee _____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ March 1, 2012 _____

_____
*Judge's signature*

City and state:         Portland, Oregon

_____ The Honorable Dennis J. Hubel _____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | AFFIDAVIT OF |
| | ) ss. | |
| DISTRICT OF OREGON | ) | YONSOO LEE |
| | ) | |

I, being duly sworn, do hereby depose and state as follows:

## I.   INTRODUCTION

1.       I am a sworn Federal Agent of the United States having been deputized as a Special Deputy United States Marshal assigned as a Task Force Agent of the United States Department of Justice Federal Bureau of Investigation (FBI).  I am empowered by law to conduct investigations and make arrests as set forth in Title 18, United States Code, Section 2516.  As such, I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7).

2.       I am a Certified Police Officer in the State of Oregon and am employed by the City of Tigard Police Department located in Washington County, Oregon.  Further, I have been employed in that capacity for over eleven years, and I have one year prior law enforcement experience with the City of Gladstone where I was employed as a Reserve Police Officer.  I am a peace officer of the State of Oregon within the meaning of Oregon Revised Statute 161.015, and I am authorized by law to conduct investigations, apply for and execute search warrants and arrest warrants, and to make arrests for violations of the Oregon Revised Statutes.

## II.    TRAINING AND QUALIFICATIONS

3.      I am currently assigned by the Federal Bureau of Investigation to both the FBI Innocence Lost Task Force, and the Oregon Human Trafficking Task Force where my duties include but are not limited to the investigation of trafficking in persons to include sex trafficking and labor trafficking in violation of Title 18, United States Code, Sections 1591 and 1589. I am currently assigned as a Detective with the Criminal Investigations Unit of the Tigard Police Department, where my duties include but are not limited to the investigation of violations of Oregon law involving violent crimes against persons. Additionally, I am assigned as a major crimes detective with the Washington County Major Crimes Team where my responsibilities include but are not limited to the investigation of homicide and officer involved shootings in Washington County. Furthermore, as a Tigard Police Detective I am also assigned to the Washington County Sexual Assault Response Team where my duties include but are not limited to the investigation of sexual assault as well as instructing law enforcement training on sexual assault investigations. In these capacities I have taken part in the application and execution of in excess of 100 search and arrest warrants, both state and federal, which have yielded valuable evidence pertaining to the investigations being conducted. I hold an Advanced Certificate from the Department of Public Safety Standards and Training (DPSST) and have over 1600 hours of progressive law enforcement training. I have received in excess of 300 hours of specialized training regarding sexual assault and sexual exploitation. In addition, my formal education includes but is not limited to a Bachelor of Science degree in Economics and a Master of Science in degree in Psychology.

## III.   APPLICABLE LAW

4.      This affidavit is submitted in support of a criminal complaint to charge Latanisha

S. Booker, date of birth July 29, 1991, with violations of Title 18, United States Code, Section

1512(a)(2)(C) (Witness Tampering and Obstruction) and 1513(b)(2) (Retaliating against a

Witness or Victim).  Section 1512(a)(2)(C) makes it a crime to use physical force or the threat of

physical force against any person, or attempts to do so, with the intent of hindering, delaying, or

preventing the communication to a law enforcement officer or judge of the United States of

information relating to the commission or possible commission of a Federal offense or a

violation of conditions of probation, supervised release, parole, or release pending judicial

proceedings.  Section 1513(b)(2) makes it a crime to knowingly engage in or threaten any

conduct thereby causing bodily injury to any person, with the intent to retaliate against the person

for providing information to a law enforcement officer relating to the commission or possible

commission of a Federal offense.

5.      The facts set forth in this affidavit are based on the following: my own personal

knowledge; knowledge obtained from other individuals during my participation in this

investigation, including other law enforcement officers; interviews of witnesses; my review of

records related to this investigation; communication with others who have knowledge of the

events and circumstances described herein; and information gained through my training and

experience.

6.      This affidavit is submitted for the limited purpose of establishing probable cause

in support of charging a criminal violation and securing an arrest warrant, it does not set forth

each and every fact that I or others have learned during the course of this investigation.  I have set

forth only those facts that I believe are necessary to establish probable cause to believe that

Latanisha S. Booker, date of birth July 29, 1991, violated 18 U.S.C. §§ 1512(a)(2)(C),

1513(b)(2).  Where statements of others are set forth in this affidavit, they are set forth in

substance and in part.

7.      As a result of the instant investigation described more fully below, there is

probable cause to believe that Latanisha S. Booker, date of birth July 29, 1991, has violated 18

U.S.C. § 1512(a)(2)(C) and 18 U.S.C. § 1513(b)(2).

IV.     **BACKGROUND OF INVESTIGATION**

8.      On February 23, 2012, I contacted and interviewed Joshua Howery, whom I

personally know to be a police officer with the Portland Police Bureau.  From speaking with

Officer Howery, I learned the following information:

9.      On the evening of February 22, 2012, Officer Howery was dispatched on a radio

call to the Motel 6 located at 9225 SE Stark Street room #216, Portland, Oregon.  Upon arriving

at the above address, Officer Howery contacted the victim, identified herein as "KW", date of

birth 1993.  KW told Officer Howery that she is a prostitute and that her pimp (who she referred

to as "Cool") had locked her out of room # 216 where she had been earlier.  KW reported that her

pimp had some of her personal property in the room and was refusing to give it back.  KW

requested Officer Howery's assistance in recovering her personal property.

10.      Officer Howery knocked at room # 216 whereupon the door was opened by a

completely nude juvenile female.  Officer Howery identified the juvenile female as "NB", date of

1995.  Officer Howery also contacted a male subject in the room whom he identified as Duy

Nguyen, date of birth March 4, 1981.  Officer Howery was unable to locate and contact KW's

pimp ("Cool").  Officer Howery checked with Motel 6 staff and learned that room #216 had been

rented by Christopher Cool Wilmer, date of birth May 17, 1983.

11.    On February 23, 2012, I contacted and interviewed KW. From speaking with KW I additionally learned:

12.    KW was recruited by Christopher Cool Wilmer for prostitution in the two months prior to her February 22, 2012, contact with police. KW was reluctant to work for Wilmer as a prostitute, but Wilmer was eventually able to convince KW to prostitute herself for him by what KW described as manipulation and an ability to get inside her head. During the time period between January 1, 2012 and February 22, 2012, Wilmer transported KW between Portland, Oregon, and the Tacoma, Washington, area for the purpose of having her engage in prostitution for his financial benefit. During the time period between January 1, 2012 and February 22, 2012, KW engaged in prostitution and then turned over the proceeds of that prostitution to Wilmer.

13.    KW further reported to me that during the two month period in which she has been working for Wilmer as a prostitute, Wilmer has also been pimping out NB. Based on my training and experience, I know that "pimping out" or "pimping" is a term or phrase which refers to those engaged in unlawful promotion or compulsion of prostitution activities. KW reported that in each of the instances in which Wilmer transported her between Portland, Oregon, and the Tacoma, Washington, area, Wilmer also transported NB to the same place for the purpose of having NB engage in prostitution. KW stated that she has personally witnessed Wilmer causing pictures and descriptions of NB to be advertised for commercial sex on websites such as backpage.com, a website which I know, based on my training and experience, to be a website commonly utilized by traffickers or pimps to advertise the sexual services of their victims. KW further stated that she has personally witnessed NW turning over the proceeds of her prostitution activities to Wilmer.

5

14.     KW reported to me that for the entire time that she was being trafficked by Christopher Wilmer, he was assisted by his niece "Tay". KW stated that 'Tay" works with Wilmer in posting on internet websites like the backpage.com, pictures and descriptions of girls for prostitution. KW also explained that during her time with Wilmer, that all of the advertisements for sex for KW and NB were posted by "Tay" at Wilmer's request. NB stated that she thinks that "Tay" also has girls of her own that she posts for prostitution in addition to helping Wilmer post the girls that he is pimping.

15.     On February 23, 2012, I contacted and interviewed NB, date of birth 1995. During this contact NB told me that on February 22, 2012, just prior to her contact with Officer Howery, she had sex with Duy Nguyen for money.

## V.     OBSTRUCTION & RETALIATION

16.     On March 1, 2012, I had contact with Detective Maury Mudrick whom I personally know to be a sworn law enforcement officer. From speaking with Detective Mudrick I learned:

17.     On February 23, 2012, Detective Mudrick personally served NB with a subpoena to appear before the Federal Grand Jury in the District of Oregon to give testimony regarding the events she previously described to law enforcement as to sex trafficking. On Febuary 24, 2012, Detective Mudrick personally served KW with a subpoena to appear before the Federal Grand Jury in the District of Oregon to give testimony regarding the aforementioned matter.

18.     On March 1, 2012, Detective Maury Mudrick had follow up contact with KW at her residence. From speaking with KW, Detective Mudrick additionally learned:

19.     On February 29, 2012, KW had been outside smoking a cigarette in front of her

6

residence located on SE 78th Avenue, Portland, Oregon 97206. While smoking her cigarette, KW observed a white car slowly drive by her house three times. KW observed that there was a black female passenger in the vehicle. KW went back inside her home and remained inside until approximately one hour later when she came back out front for another cigarette. KW had been standing near the side of the street in front of her home when the same white car drove up from behind her and a passenger in the back seat of the vehicle forcibly pulled her into the back of the car. KW stated that she immediately observed the car driven by "Tay" along with two female occupants. KW reported that "Tay" drove a couple of blocks down the street and then parked the car near a school yard. KW reported that "Tay" then handed her a cell phone and stated that someone wanted to talk to her. KW took the phone and was connected with Christopher Wilmer who told her "What you did wasn't cool, and I'm done with you." After completing the phone call, "Tay" remarked that KW could be released and that all four occupants including KW got out of the car. KW reported that she began walking across the school yard to get back to her house when she was jumped from behind by all three suspect females to include "Tay" and her two unknown accomplices. KW stated one of the three suspects hit her in the head from behind and then knocked her to the ground. KW stated that after she was on the ground, all three suspects kicked and punched her while KW curled up in a fetal position in an attempt to protect herself. KW reported that the beating continued for approximately one minute during which time "Tay" stated, "You shouldn't have turned us in." KW stated that after about a minute, the three suspects got back into their car and drove off. KW stated that she was taken to the emergency room where she got six stitches to close a cut near her eye.

20.     On March 1, 2012, Detective Maury Mudrick told me that using government and

civilian database searches he had been able identify "Tay" as Latanisha S. Booker, date of birth July 29, 1991, home address 4031 SE 122nd Ave. Apt#52. Portland, Oregon.  Detective Mudrick told me that on March 1, 2012, he showed KW a photograph of Latanisha S. Booker and KW positively identified Booker as being "Tay".

## VI.    **CONCLUSION**

21.    Based on the above information, I have probable cause to believe that Latanisha S. Booker, date of birth July 29, 1991 has violated 18 U.S.C. § 1512(a)(2)(C), which makes it a crime to use physical force or the threat of physical force against any person, or attempts to do so, with the intent of hindering, delaying, or preventing the communication to a law enforcement officer or judge of the united States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings.  Based on the above information, I also have probable cause to believe that Latanisha S. Booker, date of birth July 29, 1991 has violated 18 U.S.C. § 1513(b)(2), which makes it a crime to knowingly engage in or threaten any conduct thereby causing bodily injury to any person, with the intent to retaliate against the person for providing information to a law enforcement officer relating to the commission or possible commission of a Federal offense.

22.    In consideration of the foregoing, I respectfully request that this court issue an arrest warrant for Latanisha S. Booker, date of birth July 29, 1991.

23.    I have discussed the criminal complaint and accompanying affidavit in this case with Assistant United States Attorney (AUSA) Leah K. Bolstad.  AUSA Bolstad stated that in her opinion, the affidavit supports probable cause and is legally sufficient for issuance of the

warrant.  AUSA Bolstad further believes that this complaint and accompanying affidavit should

be filed under seal so as not to jeopardize the ongoing investigation.

_____
Yonsoo Lee
Special Deputy United States Marshal / TFO
Federal Bureau of Investigation


Subscribed to before me this **1ˢᵗ** of March, 2012.

_____
HONORABLE DENNIS J. HUBEL
UNITED STATES MAGISTRATE JUDGE

Page 9 - AFFIDAVIT OF YONSOO LEE